UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOEL RICHARDS, AND
CHERYL RICHARDS,

                Plaintiffs,

        v.

OFFICER CHAD JANIS,
OFFICER CHAD URWIN,
OFFICER M. LEE,
OFFICER IRA CAVIN, AND
CITY OF YAKIMA,

                Defendants.

NO. CV-06-3064-EFS

**ORDER DENYING DEFENDANTS OFFICER
CAVIN AND CITY OF YAKIMA'S MOTION
FOR PARTIAL SUMMARY JUDGEMENT**

    On October 11, 2007, the Court held a hearing in the above-captioned matter.  William D. Pickett appeared on behalf of Plaintiffs Joel A. Richards and Cheryl R. Richards.  Robert L. Christie and Robert C. Tenney appeared on behalf of Defendants Chad Janis, Chad Urwin, M. Lee, and Ira Cavin.  Helen A. Harvey and Robert C. Tenney appeared on behalf of Defendant City of Yakima.  Before the Court was Defendants' Motion for Partial Summary Judgment.  (Ct. Rec. 15.)  After reviewing the submitted material and hearing oral argument, the Court was fully informed.  For reasons stated below, the Court denies Defendants' Motion for Partial Summary Judgment.

//

//

ORDER ~ 1

# I.  Statement of Facts[1]

On July 23, 2005, Defendants Joel and Cheryl Richards, husband and wife, attended a Planned Parenthood street dance on North Front Street in Yakima, Washington.  According to Mr. Richards, he was "stone sober" at the street dance.  (Ct. Rec. 16, Ex. 1.)  At some point in the evening while dancing, Mr. Richards bumped into a woman behind him.  *Id.*  The woman, who was holding a glass of wine, threw the wine into his face and grabbed a full glass of beer from a bystander and threw the beer into his face as well.  *Id.*  Mr. Richards stood stunned, asking, "What the hell did you do that for?"  *Id.*  No other verbal or physical conduct occurred.

Someone notified the supervising police officers at the street dance that an incident was in progress.  Two police officers, Chad Janis and Chad Urwin responded and picked up Mr. Richards by each arm, escorting him off the dance floor towards the outer perimeter of the street dance area near a business named Corday's.  *Id.*  As the two officers and Mr. Richards neared Corday's, one officer let go of his arm.  *Id.*  Mr. Richards turned to face the officer and asked "what did I do, what are you doing this for?"  *Id.*  Mr. Richards asked for the officer's name

---

[1] In ruling on a motion for summary judgment, the Court must consider the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*).  The following factual recitation was created under this standard.

ORDER ~ 2

and badge number but received no response. *Id.* Mr. Richards then asked
to speak to Esther Vasquez, a Yakima police officer. *Id.* Mr. Richards
and Officer Vasquez had children who attended school together. *Id.* The
two officers stated they did not know Ms. Vasquez. *Id.*

Mr. Richards looked to the ground. *Id.* Then, without warning, one
of the officers placed a handcuff on one of Mr. Richards' hands. The
other officer spun Mr. Richards to the ground and, while being spun, the
first officer handcuffed Mr. Richards' second hand. *Id.* A third
officer, Officer M. Lee, joined the scene. *Id.* The officers began
"roughing up" Mr. Richards. (Ct. Rec. 43.) One officer sat on
Mr. Richards' legs and elbowed Mr. Richards in the back. (Ct. Rec. 15,
Ex. 1.) Another officer pinned Mr. Richards with his knee placed on Mr.
Richards' upper back and, with his other knee, kneed Mr. Richards in the
ribs. (Ct. Rec. 44.) The third officer grabbed Mr. Richards' hair and
banged his head into the concrete sidewalk. *Id.* Bystanders began to see
a pool of blood near Mr. Richards' head. (Ct. Recs. 43, 44, 45, 47, &
48.) During this rough-up, Mr. Richards "did not resist in any way. He
was twisted like a pretzel. He clearly was hurting and in pain. The
gentleman did not make any effort to hit, punch, or kick back. The
gentleman lay limp on the ground after the attack." (Ct. Rec. 46.)
Mr. Richards only asked, repeatedly, "What are you doing this for, what
did I do, what did I do?," with no answer from the officers. (Ct. Rec.
16, Ex. 1.)

"Just when [a bystander] thought it couldn't get any worse, another
squad car came screeching around the corner and [Officer Ira Cavin]
jumped out and ran over to [Mr. Richards who was] on the ground and

pulled out a taser." (Ct. Rec. 44.) Officer Cavin fired the taser but missed and "the current hit the sidewalk a few inches from" Mr. Richards' head. *Id.* Officer Cavin returned to the squad car, reloaded his taser, stood above Mr. Richards' head, and fired the taser into Mr. Richards' back. (Ct. Rec. 16, Ex. 1.) The taser was in "drive-stun mode," set to 50,000 volts. (Ct. Rec. 37.) An officer then kicked Mr. Richards three times "real-hard" in his right ribs. (Ct. Recs. 16, Ex. 1; 44; & 48.)

The officers noticed bystanders were attempting to take pictures. (Ct. Recs. 47 & 48.) Other bystanders were yelling "police brutality," "the man [is being] hurt," and words to that effect. (Ct. Recs. 20, Ex. A; & 48.) The officers hauled Mr. Richards to the patrol car. Before putting Mr. Richards into the vehicle, the officers put Mr. Richards' head in the door jam and slammed the door. (Ct. Recs. 44 & 45.) Mrs. Richards watched the entire event, sobbing, pleading with the officers to stop hurting Mr. Richards, and warning the officers that Mr. Richards had recently undergone surgery. (Ct. Recs. 45 & 47.)

The officers took Mr. Richards to the city jail. At the jail cell, Officer Cavin "plowed into the back of" Mr. Richards, smashing Mr. Richards face against the wall and leaving a "big old bloody mark." (Ct. Rec. 24, Ex. B-1: Richards Dep.) The officers then handcuffed one of Mr. Richards' arms, "let off a little bit, and did it again . . . , leaving another big mark on the wall." *Id.* The totality of the officers' actions resulted in Mr. Richards suffering at least three broken ribs and likely many other injuries. (Ct. Rec. 16, Ex. 1.)

The foregoing facts, presented in the light most favorable to the Plaintiffs, are in dispute. According to the Defendants, the officers

were providing security to the Planned Parenthood party as off-duty, uniformed police. (Ct. Rec. 16.) Mr. Richards was intoxicated and resisted arrest. (Ct. Rec. 20, Ex. A.) Officers claim Mr. Richards, in resisting, assaulted the officers, a felony. (Ct. Rec. 15.) Officer Cavin was asked by the other officers to apply the taser, the taser was applied in a controlled manner and on direct contact to Mr. Richards' right shoulder blade, and the taser was used in accordance with Yakima Police policy. (Ct. Rec. 20, Ex. A.) When Mr. Richards was taken to jail, Officer Cavin admits pressing his arm against Mr. Richards' head against the jail cell wall (Ct. Rec. 25, Ex. B-2: Cavin Dep.), but Defendants state Mr. Richards banged his head against the wall several times on his own volition. (Ct. Rec. 20, Ex. A.)

Mr. and Mrs. Richards brought suit against Officers Janis, Urwin, Lee, and Cavin, and the City of Yakima. Plaintiffs claim Defendants (1) violated their Constitutional search and seizure rights, (2) caused loss of physical liberty, and (3) caused physical pain and suffering and severe emotional trauma and suffering. Plaintiffs' relief arises under 42 U.S.C. § 1983, state constitutional and statutory violations, and negligence.

## II.  Analysis

In support of Officer Cavin and the City of Yakima's Motion for Partial Summary Judgment, Defendants argue Officer Cavin's taser use and use of force were reasonable under Fourth Amendment analysis and, in any case, qualified immunity protects Officer Cavin from suit. Additionally, Defendants argue the City cannot be held liable for each of the officers' actions under the doctrine of *respondeat superior* and the City cannot be

held liable under alternative theories of liability, including official policy, acts or omissions fairly attributable to, and deliberate indifference.

Summary judgment is appropriate where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party seeking summary judgment must demonstrate there is an absence of disputed issues of material fact to be entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In other words, the moving party has the burden of showing no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Lynn v. Sheet Metal Worker's Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982)). The court is to view the facts and draw inferences in the manner most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999).

A burden is also on the party opposing summary judgment to provide sufficient evidence supporting his claims to establish a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213. "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San*

*Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252).

**A.  Whether Officer Cavin's Taser Use Was Reasonable**

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the U.S. Constitution or federal statutes.  42 U.S.C. § 1983[2]; *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995).  Here, there is no disagreement that each of the officers acted under color of state law as off-duty, uniformed police officers at the Planned Parenthood street dance.  Instead, Defendant Officer Cavin argues his taser use was objectively reasonable and, therefore, did not violate a federal constitutional or statutory right.

The central question, therefore, is whether Officer Cavin's conduct deprived Mr. Richards of his Fourth Amendment right to be free from unreasonable seizure.  In determining whether police action was reasonable, the court must carefully balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Graham v. Connor*, 490

---

[2] Section  1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

ORDER ~ 7

1    U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985);

2    also citing *United States v. Place*, 462 U.S. 696, 703 (1983)).  For the

3    first half of the balancing test, the court is to determine the "quantum

4    of force used." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).  For

5    the second half of the balancing test, the court is to consider "[1] the

6    severity of the crime at issue, [2] whether the suspect poses an

7    immediate threat to the safety of the officers or others, and [3] whether

8    he is actively resisting arrest or attempting to evade arrest by flight."

9    *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8-9).

10        The court must view the relevant events from the perspective of a

11    reasonable officer on the scene and must allow "for the fact that police

12    officers are often forced to make split-second judgements — in

13    circumstances that are tense, uncertain, and rapidly evolving — about the

14    amount of force that is necessary in a particular situation." *Graham*, 490

15    U.S. at 397.  However, law enforcement does not enjoy the luxury of both

16    interpreting perspective and circumstance in its favor.  On summary

17    judgment, all facts and inferences must be viewed in favor of the

18    non-moving party. *Anderson*, 477 U.S. at 255.  Thus, although the Court

19    must view the circumstances from that of a reasonable officer, the

20    circumstances are defined by the facts most favorable to Plaintiffs.

21        The facts before the Court demonstrate a genuine dispute over

22    whether Officer Cavin's actions were reasonable.  When Officer Cavin

23    fired his taser, Mr. Richards was handcuffed, lying on the ground,

24    already subject to substantial physical force from the other three

25    officers, and physically hurt.  Several bystanders were pleading for the

26    police officers to stop their actions.  One witness characterized Officer

Cavin's conduct as "screeching around the corner in a squad car," jumping out, and firing two rounds of taser shock at Mr. Richards. Officer Cavin fired the second taser shot standing above Mr. Richards' head down into his back.  Far from the "tense, uncertain, and rapidly evolving" events imagined by *Graham,* 490 U.S. at 397, the officers "strutted about waiving cuffs and stun guns" (Ct. Rec. 43), were "completely arrogant, overly pumped up and out of control" (Ct. Rec. 46), were "feeding upon their own frenzy [and] macho behavior" (Ct. Rec. 43), and "continued to get more worked up by the minute," *id*.   Three declarants stated the officers "bragged and boasted" (Ct. Rec. 44), "seemed proud of their abusive behavior" (Ct. Rec. 47), and "act[ed] so cocky and proud"(Ct. Rec. 48).

Plaintiff's expert in police conduct, D. P. Van Blaricom,[3] stated tasering a handcuffed suspect, whether resisting or not, is almost never acceptable.  Tasering a non-resisting suspect is even more unacceptable. The National Law Enforcement Policy Center's model policy on Electronic Control Weapons states, "[t]he device is prohibited from being used . . . on a handcuffed/secured prisoner, absent overtly assaultive behavior that cannot be reasonably dealt with in any other less intrusive fashion." (Ct. Rec. 37, Ex. D.)  Mr. Blaricom concluded, based on his review of the

_____

[3] Mr. Blaricom served as a police officer for 49 years, including the last eleven as the Chief of Police in Bellevue, Washington. Mr. Blaricom has taught and trained law enforcement officers in numerous settings and has written over twenty articles for various law enforcement publications.

1  facts in this case, Officer Cavin's taser use "constituted objectively
2  unreasonable excessive force." (Ct. Rec. 37.)

3      The government's countervailing interests at stake were minimal when
4  the facts are taken in Plaintiffs' favor.  Mr. Richards bumped into a
5  woman while dancing.  Mr. Richards has not been charged or convicted of
6  assaulting a police officer.  Mr. Richards was not a threat to others.
7  Mr. Richards was not resisting arrest in any manner.  Mr. Richards never
8  attempted to flee.

9      Defendant Officer Cavin argues his taser use was reasonable because
10 it complied with the Yakima Police Department's taser policy, which
11 provides: "Extra caution shall be given when considering use of a Taser
12 on the following individuals: juveniles under 16 years of age, pregnant
13 females, elderly subjects, handcuffed persons, and persons in elevated
14 positions." (Ct. Rec. 3, Ex. 1.)  Yakima Police Chief Granato stated that
15 the policy against tasering handcuffed persons only applied to persons
16 that are standing to prevent them from injury in case of a fall. (Ct.
17 Rec. 3 ¶ 4.)  However, whether Officer Cavin fully complied with the
18 Department's taser policy is irrelevant.  The only inquiry is whether a
19 reasonable officer would know that tasering an unarmed, non-resisting,
20 handcuffed suspect would violate the suspect's constitutional rights.

21     For these reasons, the Court concludes there is a genuine issue of
22 material fact regarding whether Officer Cavin used reasonable force when
23 applying the taser and deprived Mr. Richards of his Fourth Amendment
24 right to be free from unreasonable seizure.  Accordingly, Defendant
25 Cavin's motion is denied in part.
26 //

**B.  Whether Officer Cavin's Use of Force in Jail Was Reasonable**

Defendants' Motion for Partial Summary Judgment sought "to have the § 1983 claims against the City of Yakima and Officer Cavin dismissed as a matter of law." (Ct. Rec. 15, p. 3.)  Plaintiffs' complaint includes an allegation that "[w]hile in custody, Mr. Richards was further attacked by Police Officers who violently smashed his head into the wall of his holding cell while he was handcuffed." (Ct. Rec. 1 ¶ 13.)  In response to Defendants' motion, Mr. Richards identified the principal officer conducting the smashing as Officer Cavin.  (Ct. Rec. 22, pp. 2-3.)  The identification was made possible by a deposition of Officer Cavin who admitted pinning Mr. Richards against the jail cell wall. (Ct. Rec. 25, Ex. B-2.)  Despite Defendants' broad scope of requested relief with respect to Officer Cavin, Defendants' memorandum did not seek summary judgment for Officer Cavin's actions other than the taser use.  After argument at the hearing, Defendants requested the Court grant summary judgment regarding Officer Cavin's actions in the jail cell.  After viewing the submitted evidence in the light most favorable to Plaintiffs, the Court concludes Plaintiffs established sufficient evidence (Ct. Rec. 24, Ex. B-1; Ct. Rec. 25, Ex. B-2), demonstrating a genuine issue of material fact as to whether Officer Cavin's use of force in the jail cell was reasonable.

**C.  Whether Officer Cavin is Entitled to Qualified Immunity**

Defendant Officer Cavin argues he is entitled to qualified immunity. "Qualified immunity operates . . . to protect officers from the sometimes 'hazy border between excessive and acceptable force' . . . and to ensure that before they are subjected to suit, officers are on notice their

conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (citations omitted). "Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). According to *Saucier*, a government official is not entitled to qualified immunity if the facts alleged, taken in the light most favorable to the party asserting injury, demonstrate that the officer's conduct violated a constitutional right and the right was sufficiently clear that a reasonable officer would understand that what his doing violates that right. *Saucier*, 533 U.S. at 201; *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc).

"Whether the right at issue in a claim of qualified immunity is clearly established is judged as of the date of the incident alleged and is a pure question of law." *Phillips v. Hust*, 477 F.3d 1070, 1079 (9th Cir. 2007). The exact conduct need not have been previously ruled unconstitutional. "[I]f the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts' that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quoting *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993)).

The Court finds no published case factually similar to the instant matter. However, prior to Officer Cavin's conduct, the Ninth Circuit has repeatedly recognized that "the use of force on a subdued arrestee was

ORDER ~ 12

1   unreasonable." *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994); *see*

2   *also Watkins v. City of Oakland*, 145 F.3d 1087, 1090 (9th Cir. 1998).

3   Therefore, the Court holds that the law at the time of Officer Cavin's

4   conduct clearly established that a taser must not be used against a

5   non-resisting individual.  At this stage, Defendant Cavin's motion for

6   qualified immunity is denied.  The jury will need to determine what

7   conduct Officer Cavin engaged in.

8   **D.  Whether the Evidence Supports § 1983 Claims Against the City**

9       Defendant City of Yakima argues that no evidence in the record

10  demonstrates an unconstitutional "official policy or custom" serving as

11  the moving force behind the officers' use of force against Mr. Richards.[4]

12  A municipality cannot be held liable under 42 U.S.C. § 1983 on the

13  doctrine of *respondeat superior*, and can only be held liable under § 1983

14  when the execution of a government's unconstitutional policy or custom

15  inflicts an injury.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

16      A practice is a "custom" only if it is "so persistent and widespread

17  that it constitutes a permanent and well settled city policy."  *Trevino*

18

19      [4] Defendant City of Yakima does not seek summary judgment on

20  Plaintiffs' state law tort causes of action.  In Washington,

21  municipalities may be held liable for the actions of their police

22  officers under the doctrine of *respondeat superior*, so long as the

23  officer's actions fall within the scope of employment.  *Vallendorff v.*

24  *United States*, 951 F.2d 215, 218 (9th Cir. 1991); *see also Leuthold v.*

25  *Goodman*, 22 Wash. 2d 583 (1945).

26

ORDER ~ 13

*v. Gates*, 99 F.3d 911, 918 (9th Cir.1996) (internal quotation marks omitted); *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 2002). Generally, a policy or custom cannot be based on a single occurrence of an unconstitutional action or incident, *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996); however, in some circumstances, liability can be imposed upon a municipality for a single decision by municipal policymakers, especially those such as a sheriff or a police chief. *See Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991).

Municipal liability may also be established where evidence demonstrates the municipality has ratified an employee's action, creating a *de facto* governmental policy or custom. *See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Larez*, 946 F.2d at 646; *Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1955); *Fundiller v. City of Cooper City*, 777 F.2d 1436 (11th Cir. 1985).

Plaintiffs presented sufficient evidence to establish a genuine issue of material fact as to whether the City of Yakima had a policy or custom serving as the moving force behind Officer Cavin's taser usage. As stated earlier, the Yakima Police Department's taser policy provides in pertinent part: "Extra caution shall be given when considering use of a Taser on the following individuals: juveniles under 16 years of age, pregnant females, elderly subjects, handcuffed persons, and persons in elevated positions." (Ct. Rec. 3, Ex. 1.) Chief Granato interpreted the Department's taser policy as allowing tasering suspects who are handcuffed as long as they are not standing. (Ct. Rec. 20, Ex. A.) Officer Cavin cannot recall any YPD restrictions on tasering handcuffed individuals and, in fact, used his taser on two prior occasions

(1) firing a probe into a dog on July 12, 2005, and (2) stunning a handcuffed individual on July 21, 2005.[5] (Ct. Rec. 37 ¶ 16.)  By contrast, the National Law Enforcement Policy Center's model policy prohibits tasering a handcuffed prisoner "absent overtly assaultive behavior."  (Ct. Rec. 37, Ex. D.)

Based on Officer Cavin's taser usage history, the Department's apparent acquiescence to Officer Cavin's taser usage, and the Department's broad taser policy, the Court concludes a genuine issue of material fact exists regarding whether the Department had a well-settled policy serving as the moving force behind Officer Cavin's taser use.

There is also evidence the City of Yakima ratified the officers' conduct toward Mr. Richards.  Yakima Detective Feuhrer received

--------

[5] After the taser use on Mr. Richards on July 23, 2005, Officer Cavin also stunned a handcuffed individual on June 3, 2006; fired probes into an emotionally disturbed suspect on July 21, 2006; fired probes into an unknown man who refused to drop a stick on July 31, 2006; and fired probes into a suspected unruly child who had walked away from him on September 4, 2006.  The Department has found each of these incidents within the Department's taser policy.  The parties did not brief whether subsequent events establish that the Department had a policy condoning improper taser usage as of July 23, 2005.  The Court concludes it need not resolve this question at this stage because even without the subsequent taser use there is sufficient evidence to create a genuine issue of material fact as to the existence of a policy allowing improper taser use.

ORDER ~ 15

statements of eye witnesses Mick Edvalson, Carli Edvalson, Jennifer Sharp, Sherrie Mathers, Tammie West, and Mike Fairbairn.  Declarations of these witnesses to this Court stated Mr. Richards never resisted arrest and the officers' conduct was generally abhorrent.  Nevertheless, Detective Fueherer did not request an internal investigation and did not give the witness statements to the prosecuting attorney.  (Ct. Rec. 26, Ex. B-5, p. 75-77.)   Failure to conduct an internal investigation demonstrates the Department may condone or has ratified the officers' conduct.  *Bordonaro v. McLeod*, 871 F.2d 1151, 1155-63 (1st Cir. 1989); *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987).  For this reason, the Court also concludes a genuine issue of material fact exists regarding whether the Department has ratified the officers' conduct.

### III.  Conclusion

The Court denies Defendant's Motion for Partial Summary Judgment in whole.  There are genuine issues of material fact regarding whether Officer Cavin's taser use was reasonable, whether Officer Cavin is entitled to qualified immunity, and whether the City of Yakima condones or has ratified the officers' conduct through its taser policy and other unwritten general policy.

Accordingly, **IT IS HEREBY ORDERED**: Defendants's Motion for Partial Summary Judgment **(Ct. Rec. 15)** is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and to provide copies to all counsel.

**DATED** this ___17th___ day of October 2007.

S/ Edward F. Shea
EDWARD F. SHEA
United States District Judge

ORDER ~ 16